UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RANDY DAY,

       Plaintiff,

    v.

AZIYO BIOLOGICS, INC. D/B/A
ELUTIA, INC. F/K/A/ AZIYO
BILOGICS, INC., MEDTRONIC
SOFAMOR DANEK USA, INC.,
AND SPINALGRAFT TECHNOLOGIES,
LLC, DCI DONOR SERVICES, INC. AND
 NEW MEXICO DONOR SERVICES,

       Defendants.

Case No.  2:24-cv-
JUDGE

---

MARC LIPTON (P43877)
CHRIS J. CAMPER (P74293)
STEFFANI CHOCRON (P45335)
KYLE J. KELLY (P69863)
LIPTON LAW CENTER, P.C.
Attorneys for Plaintiff
18930 W. Ten Mile Road
Southfield, Michigan 48075
T: (248) 557-1688
Marc@liptonlaw.com
Steffani@liptonlaw.com
Chris@liptonlaw.com

KEITH E. DONOVAN (Bar ID 3044)
MATTHEW R. FOGG (Bar ID 4244)
MORRIS JAMES LLP
Attorneys for Plaintiff
500 Delaware Avenue, Ste. 1500
Wilmington, DE  19801
T: (302) 888-6800
kdonovan@morrisjames.com
mfogg@morrisjames.com
    * Pro Hac Vice Applications
Forthcoming

---

## COMPLAINT

COMES NOW Plaintiff, Randy Day, by and through his attorneys, as and for his complaint against Defendants, Aziyo Biologics, Inc. d/b/a Elutia, Inc., Elutia, Inc.. f/k/a Aziyo Biologics, Inc., Medtronic Sonafor Danek USA, Inc. and Spinalgraft Technologies, LLC, DCI Donor Services, Inc. and New Mexico Donor Services (collectively, "Defendants"), and alleges as follows:

### I.     INTRODUCTION

1.     This action seeks to recover damages for the personal injuries suffered by RANDY DAY, which were the direct and proximate result of the wrongful conduct of AZIYO BIOLOGICS, INC., ELUTIA, INC., MEDTRONIC SOFAMOR DANEK USA, INC. and SPINALGRAFT TECHNOLOGIES, LLC, DCI DONOR SERVICES, INC. and NEW MEXICO DONOR SERVICES in connection with the harvesting, research, testing, design, development, manufacture, production, inspection, labeling, advertisement, marketing, promotion, sale, and distribution of FiberCel Fiber Viable Bone Matrix ("FiberCel").

### II.     PARTIES

2.     Plaintiff, RANDY DAY ("Plaintiff"), is and at all relevant times was a resident of New Baltimore, State of Michigan.

3.     Defendant AZIYO BIOLOGICS, INC., d/b/a ELUTIA, INC. ("Aziyo") is a Delaware corporation whose principal place of business is located at 12510 Prosperity Drive, Suite 370, Silver Springs, Maryland 20904. Upon information and belief, Aziyo does business throughout the United States, including conducting regular business in Michigan. Azyio's registered agent for service of process in Michigan is Lawyers Incorporating Service, 2900 West Rd., East Lansing, MI 48823.

4.     Upon information and belief, Azyio recently changed its corporate name to Elutia, Inc. (for the purpose of this complaint Elutia, Inc. f/ka/ Aziyo Biologics shall be referred to as "Aziyo").

5     Aziyo sells a variety of medical products, including implantable electronic devices, orthopedic and spinal repair products, and soft tissue reconstruction products.

6.     Upon information and belief, Aziyo developed, manufactured, marketed, promoted, distributed, supplied and/or sold FiberCel which was implanted into Plaintiff, Randy Day, and which is the subject of this complaint.

7.     Defendant, MEDTRONIC SOFAMOR DANEK USA, INC. is a Tennessee corporation, with a principal place of business located at 710 Medtronic Parkway, Minneapolis, MN 55432-5604.  Medtronic does business throughout the United States, including conducting regular business in the State of Michigan.

Medtronic's registered agent for service of process in Michigan is CSC- Lawyers Incorporating Service, located at 2900 West Road, Ste. 500, East Lansing, MI 48823.

8.     Defendant, SPINALGRAFT TECHNOLOGIES, LLC is a Tennessee limited liability company with a principal place of business located at 4340 Swinnea Rd., Memphis, TN 38118.  Spinalgraft does business throughout the United States, including conducting regular business in the State of Michigan. Spinalgraft's registered agent for service of process in Michigan is CSC- Lawyers Incorporating Service, 2900 West Road, Ste. 500, East Lansing, MI 48823.

9.     Medtronic/Spinalgraft develop therapeutic and diagnostic medical products are, along with their affiliates, among the world's largest medical technology, services, and solutions companies. Upon information and belief, Medtronic/Spinalgraft were directly and pertinently involved in the development, marketing, sale and distribution of the FiberCel product herein and the Medtronic and Spinalgraft Defendants are jointly and severally liable for all causes of action herein.

10.    Upon information and belief, during the pertinent times, Medtronic/Spinalgraft were designated as the exclusive U.S. distributor of the FiberCel product manufactured by Defendant, Aziyo.

11.     At all times relevant, Medtronic/Spinalgraft developed, distributed, supplied and sold the FiberCel product which was implanted into Plaintiff, and which is the subject of this complaint.

12.     At all times relevant, Medtronic/Spinalgraft distributed, supplied and/or sold FiberCel in Michigan which was implanted into Plaintiff, Randy Day, and which is the subject of this complaint.

13.     Defendant, DCI DONOR SERVICES, INC. is incorporated in Tennessee, having its principal place of business at 566 Mainstream Dr., Ste. 300, Nashville, TN 47288.  Upon information and belief, DCI Donor Services does business throughout the United States, including conducting regular business in the State of Michigan. DCI has a registered agent for service, Corporation Service Company, 2908 Poston Ave., Nashville, TN 19808. DCI DONOR SERVICES, INC. is the parent company of NEW MEXICO DONOR SERVICES.

14.     Defendant, NEW MEXICO DONOR SERVICES is incorporated in New Mexico, having its principal place of business at 1609 University Blvd. NE, Albuquerque, NM 87012. Upon information and belief, New Mexico Donor Services does business throughout the United States, including conducting regular business within the State of Michigan. New Mexico Donor Service has a registered agent for service located at Corporation Service Company, MC-CSC1726 E. Michigan Dr., Ste. 101, Hobbes, NM 88240.

15.    DCI DONOR SERVICES, INC. and NEW MEXICO DONOR SERVICES (collectively "Donor Services" or "Donor Defendants" are engaged in the business of, inter alia, locating, properly identifying, qualifying, and recovering parts of human cadavers that should at all times qualify for recovery, processing, distribution and ultimately for use in a wide variety of surgical procedures where human bone, tissue, etc. can be appropriately and safely utilized. harvested, processed, supplied and/or sold human tissue for use in Fibercel which was implanted into Plaintiff, Randy Day and which is the subject of this complaint.

16.    Upon information and belief, Donor Services harvested, recovered, processed, supplied and/or sold human tissue for use in FiberCel which was implanted into Plaintiff, and which is the subject of this complaint.

17.    Defendants, at all times relevant to this lawsuit, manufactured, developed, designed, marketed, distributed, promoted, supplied and/or otherwise sold (directly or indirectly) FiberCel to various locations for use in surgeries requiring bone grafting, including to medical facilities in Michigan where it was surgically implanted into Plaintiff, Randy Day, causing him to suffer harm as described herein.

### III.      <u>JURISDICTION AND VENUE</u>

18.     This claim arises out of a lumbar spine operation performed on Plaintiff, Randy Day, at Ascension St. John's Hospital, Detroit, Michigan on April 1, 2021, in which FiberCel was surgically implanted into his body.

19.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C §1332(a)(1) because this case is a civil action where the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and is between citizens of difference states.

20.     At all times relevant to this litigation, the Defendants have been engaged either directly or indirectly, in the business of acquiring, supplying, manufacturing, testing, marketing, selling, and/or distributing FiberCel and/or the human tissue used in FiberCel within the State of Michigan, with a reasonable expectation that the product would be used in the State of Michigan, and thus regularly solicited or transacted business in this State.

21.     Venue is properly set in this District pursuant to 28 U.S.C. §1391(b) since Defendants transact business within this judicial district and a substantial part of the events giving rise to this claim occurred within this judicial district.

## IV.        FACTUAL ALLEGATIONS

### A.    FiberCel Fiber Viable Bone Matrix

22.    FiberCel Fiber Viable Bone Matrix ("FiberCel") is made, in part, from human tissue consisting of cancellous bone particles with preserved cells, combined with demineralized cortical fiber.  It is engineered to be like natural tissue and is used as a bone void filler in various orthopedic and spinal procedures.  The allografts contain the scaffold, growth factors and cells required for regeneration critical for successful bone formation.

23.    FiberCel is classified by the FDA as a human cell, tissue, cellular or tissue-based product (HCT/P).  HCT/P's are regulated by the FDA as drugs, devices, and/or other biological products.

24.    FiberCel is marketed for use in orthopedic and reconstructive bone grafting procedures with the use of autologous bone or other forms of allograft bone or alone as a bone graft.

25.    The FiberCel package inserts states that "THIS PRODUCT IS MANUFACTURED FROM DONATED HUMAN TISSUE", which consists of highly processed donor tissue and growth factor cells.  The exact formulation of FiberCel is closely held by Defendants and is not known to Plaintiff.

26.    The FiberCel product is accompanied by a package insert containing Instructions for Use ("IFU") which includes the following:

    \*      "FiberCel is preserved in 5% dimethyl sulfoxide (DMS) in a 0.9% sodium chloride solution, Providone iodine, Dulbeccos phosphate buffered saline, sodium phosphate, hydrochloric acid and hydrogen peroxide are all used for processing, preservation and storage of the allografts and trace amounts of these solutions may be present in the product";

    \*      "Donor eligibility determination was made by Aziyo Biologics in compliance with U.S. FDA regulations (21 CFR 1270 and 1271)) and American Association of Tissue Banks (AATB) Standards";

    \*      "FiberCel should be transplanted within two hours of thawing and all unused product should be discarded.  Product is intended for single use and should not be refrozen or sterilized."

27.    Because FiberCel uses human tissue from human donors, and includes preserved living cells, it is imperative that rigorous screening and quality control procedures be used to ensure that the resultant product is not contaminated.   This is also so because the FiberCel product is meant to be used in surgeries and medical procedures involving patients already in a vulnerable medical status given their context as procedure recipients.

28.    On June 20, 2019, Aziyo announced it had signed an exclusive, multi-year distribution agreement with defendant Medtronic/Spinalgraft in the U.S. orthopedic market. According to the agreement, Aziyo agreed to manufacture and supply FiberCel to Medtronic/Spinalgraft for distribution through the company's sales and marketing organization.

29.    Medtronic/Spinalgraft along with their affiliates comprise a very large and sophisticated medical manufacturer and distributor.  The enterprise holds itself out as having special knowledge and expertise regarding the medical products that it carries and distributes, and in fact even has training and instructional videos pertaining to the use of the FiberCel product on its Medtronic English language website.

30.    Upon information and belief, in addition to distributing FiberCel, Medtronic/Spinalgraft developed FiberCel along with Defendant Aziyo Biologics, Inc.

31.    FiberCel is a human tissue-based medical product that was developed by Aziyo and Medtronic/Spinalgraft and later branded, marketed and sold by Aziyo and Medtronic.

32.    Medtronic/Spinalgraft used a team of sales representatives to market the FiberCel product to doctors and hospitals across the Country.

33.    The FiberCel used in Plaintiff's surgery was manufactured using human tissue recovered from a single donor by DCI Donor Services, Inc. and New Mexico Donor Services ("Donor Services").

34.    Upon information and belief, the single donor whose tissue was recovered by Donor Services had a tuberculosis infection prior to his death and had clear signs and symptoms at the time of his death of an infectious etiology.

### B.    FiberCel Recall

35.    On June 2, 2021, the United States Food & Drug Administration (FDA) issued an urgent voluntary recall of FiberCel, specifically three products from Donor Lot Number NMDS210011: VMB9901, VBM9905, and VBM9910.

36.    Aziyo initiated the voluntary recall in response to reports of patients testing positive for Tuberculosis and post-surgical infections following the surgical implantation of FiberCel as part of an orthopedic or spinal procedure.

37.    Tuberculosis ("TB") is an infectious disease caused by bacteria known as Mycobacterium tuberculosis.  TB is highly contagious, and mostly impacts the lungs, but can also spread through the lymph nodes to other parts of the body, including the kidneys, brain, and spine.

38.    Once mycobacterium tuberculosis is introduced to the body, the bacteria must then proliferate within the new host for the host to develop disease. When this bacteria is introduced in a surgical wound, the patient is already in an immunocompromised position, causing them to have an increased likelihood of developing TB, which can be fatal.

39.    The recalled contaminated FiberCel lot contained 154 units delivered to 20 states, including Michigan.

40.    Upon information and belief, Ascension Providence Hospital re received   several   units   from   the   contaminated   FiberCel   Donor   Lot   No.

NMDS210011, and the contaminated units were implanted into several patients, including Plaintiff, Randy Day.

41. Multiple patients that received FiberCel from this Donor Lot have tested positive for Tuberculosis, including Plaintiff, Randy Day.

42. This recall acknowledged that viruses and bacteria, including Tuberculosis, can be transplanted into patients along with the FiberCel product.

## C. Plaintiff Received the Contaminated FiberCel and as a Result, Suffered Severe Injury

43. Plaintiff, Randy Day, underwent lumbar spine surgery on April 1, 2021, at Ascension St. John Hospital in Detroit, Michigan.

44. Plaintiff, Randy Day's surgery included bone grafting, utilizing FiberCel from Donor Lot Number NMDS210011.

45. Unbeknownst to Plaintiff, Randy Day, or his physicians at the time of his surgery, the FiberCel implanted into Plaintiff was contaminated with tuberculosis.

46. Following his April 1, 2021, operation, Plaintiff, Randy Day, tested positive for tuberculosis.

47. Plaintiff's tuberculosis was caused by the contaminated and recalled FiberCel used in his operation, which contained contaminated human tissue recovered by Donor Services and developed, manufactured, sold and distributed by Aziyo and Medtronic defendants.

12

48.     The FiberCel product contained no adequate warning to Plaintiff or his physicians of the danger that he could contract tuberculosis if a FiberCel product was used during surgery.

49.     As a direct and proximate result of the implantation of contaminated FiberCel, Plaintiff was forced to undergo additional painful and complicated lumbar spine reconstructive surgeries and wound care procedures.

50.     Plaintiff continues to suffer from lumbar spine pain, weakness, stiffness, fatigue, sleep disturbance, anxiety, and depression that, upon information and belief, are related to the tuberculosis infection and/or the treatment he received due to said infection.

51.     Plaintiff's diagnosis of tuberculosis has required extensive and invasive medical protocols to manage the manifestation of this disease.

52.     Plaintiff will require continued medical monitoring now and into the future in order to monitor Plaintiff's health related to the ongoing and serious nature of his tuberculosis diagnosis.

53.     Plaintiff would not have suffered from tuberculosis, as well as the need to undergo the treatment he has had and will in the future endure, had Defendants sold and distributed a product that was free from tuberculosis contamination.

54.     As a direct and proximate result of Plaintiff's exposure to Defendants' contaminated FiberCel product used in his lumbar spine surgery, Plaintiff has

suffered and continues to suffer from severe pain and discomfort, emotional distress, the loss of daily functions, and economic loss, including, but not limited to, present and future medical expenses, all of which are a direct result of Defendants' liability producing conduct.

V.   <strong>CAUSES OF ACTION</strong>

<strong>FIRST CAUSE OF ACTION</strong>

<strong>Negligence Against Aziyo Biologics, Inc., Elutia, Inc., Medtronic Sofamore Danek, USA, Inc. and Spinalgraft Technologies, LLC</strong>

55.     Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

56.     Defendants owed a duty to Randy Day to exercise reasonable care in designing, researching, manufacturing, marketing, supplying, promoting, sale, testing, quality, assurance, quality control, and distribution of FiberCel into the stream of commerce, including a duty to assure that the FiberCel would not cause those who used it, including Randy Day, to suffer adverse harmful effects.

57.     Defendants failed to exercise reasonable care in the designing, researching, manufacturing, marketing, supplying, promoting, sale, testing, quality assurance, quality control and distribution of FiberCel.

58.     Defendants knew or should have known that those individuals who used the defective FiberCel were at risk for suffering harmful effects from it, including but not limited to, tuberculosis, as well as other severe injuries which are

14

permanent and lasting in nature, physical pain, mental anguish, and diminished enjoyment of life.

59.     Defendants were negligent in designing, researching, supplying, manufacturing, promoting, packaging, distributing, testing, advertising, warning, marketing, and sale of FiberCel.   The negligence of Defendants, their agents, servants, and employees, included, but was not limited to, the following acts and/or omissions:

a.  Designing, developing, manufacturing, producing, creating, and/or promoting FiberCel without adequately, sufficiently, or thoroughly testing the FiberCel units to ensure they were free from contamination of communicable diseases, including but not limited to, tuberculosis;

b.  Negligently selling their FiberCel product which was contaminated with tuberculosis;

c.  Not conducting a sufficient quality control testing program to determine whether or not the subject FiberCel was manufactured properly and was free from contamination or other defects making it unsafe for users of the product;

d.  Failing to have a sufficient quality control program to ensure that the donor whose tissue was used in the subject FiberCel was free from communicable disease;

e.  Failing to adequately and properly obtain and review complete donor medical history of the donor whose tissue was used in the product;

f.  Failing to adequately and properly review the entire donor chart for signs and symptoms of communicable disease;

g.  Failing to recognize signs and symptoms of communicable disease in the donor whose tissue was used in the recalled FiberCel;

h.  Negligently making a donor eligibility determination;

    i.   Failing to follow applicable statutes, regulations, FDA guidelines, AATB rules, and industry standards in determining that donor tissue used in the recalled FiberCel was eligible for use in the product;

    j.   Negligently failing to timely recall their dangerous and defective FiberCel lots at the earliest date that it became known that certain lots of FiberCel were, in fact, dangerous and defective;

    k.   Negligently manufacturing FiberCel in a manner that was dangerous to those individuals who had FiberCel implanted into their bodies;

    l.   Negligently producing FiberCel in a manner that was dangerous to those individuals who had it transplanted into their bodies;

    m.   Negligently and carelessly using human tissue from an unqualified and inadequately screened human donor;

    n.   Were grossly negligent by willfully ignoring factors that should have led the donor to be deemed ineligible for tissue recovery;

    o.   Failing to warn individuals who were using the product of the risks of contracting tuberculosis; and

    p.   Acting otherwise careless and negligently.

60.    Defendants knew or should have known that consumers, such as Plaintiff, Randy Day, would suffer foreseeable injury and be at increased risk of suffering an injury as a result of Defendants' failure to exercise ordinary care, as set forth above.

61.    Defendants' negligence was the proximate cause of and was a substantial contributing factor in causing Plaintiff, Randy Day's physical, mental, emotional injuries and harm, and economic loss.

62.     By reason of the foregoing, Defendants are liable to Randy Day for all of his injuries, harm, damages, and economic and non-economic losses in an amount to be determined in the future.

## SECOND CAUSE OF ACTION

**Breach of Implied Warranty Against Aziyo Biologics, Elutia, Inc. Medtronics Safamore Danek, USA and Spinalgraft Technologies, LLC**

63.     Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

64.     Defendants are in the business of designing, manufacturing, supplying, selling, and placing into the stream of commerce certain goods, including FiberCel.

65.     By placing FiberCel into the stream of commerce, Defendants impliedly warranted that it was merchantable and fit and safe for its intended use.

66.     The FiberCel placed into the stream of commerce by Defendants and implanted into Plaintiff was contaminated, leading those persons who received FiberCel implants to develop tuberculosis, including Plaintiff, and accordingly, was not fit, safe, or merchantable for its intended use.

67.     The contamination in the FiberCel, manufactured, supplied, and placed into the stream of commerce by Defendants was present at the time the FiberCel units left Defendants' control and at the time it was implanted into Plaintiff as part of his spinal operation.

68.     Defendants breached the implied warranty for FiberCel because it was contaminated, unmerchantable, and not fit for its intended purpose, resulting in personal injuries suffered by Randy Day, including his development of tuberculosis.

69.     Plaintiff, Randy Day, was a foreseeable user of the FiberCel designed, manufactured, and placed into the stream of commerce by Defendants.

70.     By reason of the foregoing, Defendants are liable to Plaintiff, Randy Day, for his injuries, harm, damages, and economic and non-economic losses in an amount to be determined at trial.

## THIRD CAUSE OF ACTION

**Breach of Express Warranty Against Aziyo Biologics, Elutia, Inc., Medtronics Safamore Danek, USA and Spinalgraft Technologies, LLC**

71.     Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint as if they were set forth at length herein.

72.     At all times mentioned, Defendants expressly represented and warranted to Plaintiff and Plaintiff's agents and physicians, by and through statements made by Defendants and their authorized agents or sales representatives, orally and in publications, package inserts, and other written materials intended for physicians, medical patients, and the public, that FiberCel is safe, effective, fit, and proper for its intended use.  Plaintiff and Plaintiff's physicians utilized FiberCel relying upon these warranties.

73.     Defendants' own promotion states that FiberCel is processed in sterile conditions and is screened for bacteria and communicable disease.

74.     Defendants also expressly represented that Donor eligibility determination was made by Aziyo Biologics in compliance with American Association of Tissue Banks Standards.

75.     In utilizing FiberCel, Plaintiff and Plaintiff's medical providers relied on the skill, judgment, representation, and foregoing express warranties of the Defendants.   These warranties and representations were false in that FiberCel is unsafe and unfit for its intended uses.

76.     As a result of the abovementioned breach of express warranties by Defendants, Plaintiff suffered injuries and damages as alleged herein.

77.     By reason of the foregoing, Defendants are liable to Plaintiff, Randy Day, for his injuries, harm, damages, economic and non-economic damages in an amount to be determined at Trial.

## **FOURTH CAUSE OF ACTION**

### **Gross Negligence Against Aziyo Biologics, Elutia, Inc., Medtronics Safamore Danek, USA and Spinalgraft Technologies, LLC**

78.     Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

79.     Plaintiff is further informed and believes that Defendants' misconduct, as previously outlined herein, constituted a conscious disregard for the rights and

safety of other persons, including Plaintiff, Randy Day, that had a great probability of causing substantial harm including, but not limited to, exposing Randy Day and other recipients of FiberCel to tuberculosis, a potentially deadly infectious disease.

80.     Plaintiff is further informed and believes that Defendants engaged in conduct with respect to the contaminated FiberCel unit alleged herein which was a legal cause of loss, damages, injuries, and harm to Plaintiff, and which exposed Plaintiff and other recipients of the contaminated FiberCel units to serious complications, including the diagnosis of tuberculosis in Plaintiff's post-surgical wound.

81.     Defendants' actions and inactions leading to the contamination of the FiberCel product were outrageous, willful and wanton, and done with reckless disregard for the safety of the Plaintiff, Randy Day.

82.     The Defendants' outrageous, willful and wanton, and reckless conduct in disregard of the safety of the Plaintiff was the direct proximate cause of Plaintiff's injuries and damages.

83.     As a direct and proximate result of the Defendants' outrageous, willful and wanton, and reckless conduct in disregard of the safety of the Plaintiff, Randy Day, the Plaintiff has suffered and continue to suffer damages as set forth above.

84.     The gross negligence of the defendants constitutes an exception to the limitation on damages set forth in MCL 600.2946a.

## <u>FIFTH CAUSE OF ACTION</u>

### Negligence Against DCI Donor Services, Inc. & New Mexico Donor Services

85.    Plaintiff incorporated paragraphs 1 through 70 as thought the same were set forth at length herein.

86.    Donor Defendants owed a duty to Plaintiff, Randy Day to exercise reasonable care in harvesting, processing, supplying, promoting, selling, testing, quality assurance, quality control, and distribution of human tissue into the stream of commerce, including a duty to assure that their human tissue, which was used in the subject FiberCel lot, would not cause though who used it, including Randy Day, to suffer adverse harmful effect.

87.    Donor defendants failed to exercise reasonable care in the harvesting, processing, supplying, testing, quality assurance, quality control, sale and distribution of their human tissue product for use in FiberCel.

88.    Donor defendants knew or should have known that those individuals who were exposed to their contaminated human tissue used in FiberCel were at risk for suffering harmful effects from it, including but not limited to, tuberculosis, as well as other severe injuries which are permanent and lasting in nature, physical pain, mental anguish, and diminished enjoyment of life.

89.    Donor defendants were negligent in the harvesting, processing, supplying, testing, quality assurance, quality control sale, and distribution of their

human tissue produce for use in FiberCel.  The negligence of the Donor

Defendants, their agents, servants, and employees, included, but was not limited, to

the following acts and/or omissions:

    a. Harvesting, recovering, processing, and selling human tissue for use in FiberCel without adequately, sufficiently, or thoroughly testing the human tissue to ensure that it was free from contamination of communicable diseases, including but not limited to, tuberculosis;

    b. Not conducting a sufficient quality control testing program to determine whether or not the subject human tissue used in the aforementioned defective FiberCel lot was properly recovered and was free from contamination or other defects making it unsafe;

    c. Failing to adequately and properly obtain and review complete donor medical history;

    d. Failing to stop the tissue recovery process once signs and symptoms of infection were discovered;

    e. Failing to have medical professionals review the subject donor's body, medical records, and donor chart;

    f. Negligently failing to timely recall their dangerous and contaminated human tissue at the earliest date that it became known that its human tissue sold for use in FiberCel was in fact, dangerous and defective;

    g. Negligently harvesting, recovering, and selling human tissue for use in FiberCel in a manner that was dangerous to those individuals who had FiberCel implanted into their bodies;

    h. Negligently and carelessly recovering tissue from an unqualified and inadequately screened human donor;

    i. Negligently failing to screen the human donor whose tissue was used in the subject lot of FiberCel for signs of infection or disease that would have led Defendants to stop the tissue recovery process;

    j. Negligently failing to test the human donor tissue and/or bone;

k. Failing to warn individuals who were using their human tissue of the risks of contracting tuberculosis;

l. Were grossly negligent by willfully ignoring factors that should have led the donor to be deemed ineligible for tissue recovery;

m. Acting in bad faith by failing to recognize obvious signs and symptoms of communicable disease of the donor and instead selling contaminated human tissue from the donor to be used in products that would be implanted into living individuals; and

n. Were otherwise careless and negligent.

90.    Donor defendants knew or should have known that consumers, such as Randy Day, would suffer foreseeable injury and be at increased risk of suffering an injury as a result of donor defendants' failure to exercise ordinary care, as set forth above.

91.    Donor defendants' negligence as the proximate cause of Plaintiff, Randy Day's physical, mental, emotion injuries and harm, and economic loss.

92.    By reason of the foregoing, Donor defendants are liable to plaintiff for all of his injuries, harm, damages, and economic and non-economic losses in an amount to be determined in the future.

## SIXTH CAUSE OF ACTION

### Breach of Express Warranty Against DCI Donor Services, Inc. & New Mexico Donor Services

93.    Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint as if they were set forth at length herein.

94.     At all times mentioned, Donor Defendants expressly represented and warranted to Plaintiff and Plaintiff's agents and physicians, by and through statements made by Defendants and their authorized agents or sales representatives, orally and in publications, package inserts, and other written materials intended for physicians, medical patients, and the public, that their human tissue product sold for use in FiberCel is safe, effective, fit, and proper for its intended use.  Plaintiff and Plaintiff's physicians utilized FiberCel and the human tissue used in FiberCel relying upon these warranties.

95.     In utilizing FiberCel and the human tissue used in FiberCel, Plaintiff relied on the skill, judgment, representation, and foregoing express warranties of the Defendants.  These warranties and representations were false in that FiberCel and its human tissue component are unsafe and unfit for its intended uses.

96.     As a result of the abovementioned breach of express warranties by Defendants, Plaintiff suffered injuries and damages as alleged herein.

**SEVENTH CAUSE OF ACTION**

**BREACH OF IMPLIED WARRANTY**
**(Against DCI Donor Services, Inc. and New Mexico Donor Services)**

97.     Plaintiffs incorporate the foregoing paragraphs as though the same were set forth at length herein.

98.     Donor Defendants are in the business of harvesting, recovering, selling, and placing into the stream of commerce certain goods and/or services, including

the sale of human tissue.   By placing human tissue into the stream of commerce to be used in surgical procedures, including the Plaintiff's surgical procedure, Defendants impliedly warranted that it was merchantable and fit and safe for its intended use.

99.    The tuberculosis contaminated human tissue sold by Donor Defendants and placed into the stream of commerce by Defendants and implanted into Plaintiff was contaminated, leading persons who received FiberCel utilizing contaminated human tissue sold by Donor Defendants to develop tuberculosis, including Plaintiff, and accordingly, was not fit, safe, or merchantable for its intended use.

100.    The contamination in the human tissue, harvested, recovered, supplied, sold, and placed into the stream of commerce by the Donor Defendants was present at the time the human tissue left Defendants' control and at the time it was implanted into Plaintiff as part of her spinal operation.

101.    Defendants breached the implied warranty for its human tissue because it was contaminated, unmerchantable, and not fit for its intended purpose, resulting in personal injuries suffered by Plaintiff, including her development of tuberculosis.

102.    Established medical and technological procedures existed at the time Donor Defendants harvested, recovered, supplied, and sold the tuberculosis contaminated human tissue that could have been employed pursuant to the standards

of local medical practice that would have detected the presence of an infection in the donor, including but not limited to, the detection of tuberculosis.

103.   Had established medical and technological procedures been employed, including but not limited to additional blood testing, Donor Services could have discovered that its tissue was contaminated with tuberculosis and could have prevented its human tissue from being disseminated for use in surgical procedures.

104.   Plaintiff was a foreseeable user and/or recipient of the human tissue harvested, recovered, supplied, sold, and placed into the stream of commerce by Defendants.

105.   By reason of the foregoing, Defendants are liable to Plaintiff, Randy Day, for his injuries, harm, damages, and economic and non-economic losses in an amount to be determined at trial.

## SEVENTH CAUSE OF ACTION

### Gross Negligence Against DCI Donor Services, Inc. & New Mexico Donor Services

106.   Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

107.   Plaintiff is further informed and believes that Defendants' misconduct, as previously outlined herein, constituted a conscious disregard for the rights and safety of other persons, including Plaintiff, Randy Day, that had a great probability

of causing substantial harm including, but not limited to, exposing Randy Day and other recipients of FiberCel to tuberculosis, a potentially deadly infectious disease.

108.    Plaintiff is further informed and believes that Defendants engaged in conduct with respect to the contaminated FiberCel unit alleged herein which was a legal cause of loss, damages, injuries, and harm to Plaintiff, and which exposed Plaintiff and other recipients of the contaminated FiberCel units to serious complications, including the diagnosis of tuberculosis in Plaintiff's post-surgical wound.

109.    Defendants' actions and inactions leading to the contamination of the FiberCel product were outrageous, willful and wanton, and done with reckless disregard for the safety of the Plaintiff, Randy Day.

110.    The Defendants' outrageous, willful and wanton, and reckless conduct in disregard of the safety of the Plaintiff was the direct proximate cause of Plaintiff's injuries and damages.

111.    As a direct and proximate result of the Defendants' outrageous, willful and wanton, and reckless conduct in disregard of the safety of the Plaintiff, Randy Day, the Plaintiff has suffered and continue to suffer damages as set forth above.

112.    The gross negligence of the defendants constitutes an exception to the limitation on damages set forth in MCL 600.2946a.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief against Defendants, jointly and severally, as follows:

      a.     Compensatory damages exclusive of interest and costs, and in an amount to fully compensate Plaintiff for all past, present, and future pain and suffering.

      b.     Special damages, exclusive of interest and costs, and in an amount to fully compensate Plaintiff for all of his injuries and damages, both past and present;

      c.     Exemplary damages for the wanton, willful, fraudulent, reckless acts of the Defendants who demonstrated a complete disregard and reckless indifference for the safety and welfare of the general public and to the Plaintiff in an amount sufficient to punish Defendants and deter future similar conduct;

      d.     Attorneys' fees, expenses, and costs of this action;

      e.     Pre-judgment and post-judgment interest in the maximum amount allowed by law; and

      f.     Such further relief as this Court deems necessary, just, and proper.

Respectfully submitted,


LIPTON LAW, P.C.

By /s/ Marc Lipton
MARC LIPTON (P43877)
STEFFANI CHOCRON (P45335)
CHRIS J. CAMPER (P74293)
KYLE J. KELLY (P69863)
Attorneys for Plaintiff
18930 W, 10 Mile Road
Southfield, Michigan 48075
Dated: July 22, 2024                (248) 557-1688

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RANDY DAY,

       Plaintiff,

   v.

AZIYO BIOLOGICS, INC. D/B/A
ELUTIA, INC. F/K/A/ AZIYO
BILOGICS, INC., MEDTRONIC
SOFAMOR DANEK USA, INC.,
AND SPINALGRAFT TECHNOLOGIES,
LLC, DCI DONOR SERVICES, INC. AND
 NEW MEXICO DONOR SERVICES,

       Defendants.

Case No.  2:24-cv-
JUDGE

---

MARC LIPTON (P43877)
CHRIS J. CAMPER (P74293)
STEFFANI CHOCRON (P45335)
KYLE J. KELLY (P69863)
LIPTON LAW CENTER, P.C.
Attorneys for Plaintiff
18930 W. Ten Mile Road
Southfield, Michigan 48075
T: (248) 557-1688
Marc@liptonlaw.com
Steffani@liptonlaw.com
Chris@liptonlaw.com

KEITH E. DONOVAN (Bar ID 3044)
MATTHEW R. FOGG (Bar ID 4244)
MORRIS JAMES LLP
Attorneys for Plaintiff
500 Delaware Avenue, Ste. 1500
Wilmington, DE  19801
T: (302) 888-6800
kdonovan@morrisjames.com
mfogg@morrisjames.com
   * Pro Hac Vice Applications
Forthcoming

---

**JURY DEMAND**

Plaintiff hereby demand trial by jury in the above matter.

                                      Respectfully submitted,


                                        LIPTON LAW, P.C.

                                        By /s/ Marc Lipton
                                        MARC LIPTON (P43877)
                                        STEFFANI CHOCRON (P45335)
                                        CHRIS J. CAMPER (P74293)
                                        KYLE J. KELLY (P69863)
                                        Attorneys for Plaintiff
                                        18930 W, 10 Mile Road
                                        Southfield, Michigan 48075
Dated: July 22, 2024                    (248) 557-1688